UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| JEFFREY MCCLOUD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:24-cv-00331-JRS-MJD |
| | ) | |
| R. VANVLEET, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Jeffrey McCloud, who is incarcerated by the Indiana Department of Correction ("IDOC"), alleges in this case that, when he was confined at Wabash Valley Correctional Facility ("WVCF"), he was wrongly subjected to the use of OC spray, that his cell was not cleaned after the use of the spray, and that he was retaliated against for complaining. Defendants have moved for summary judgment and Mr. McCloud did not respond. For the reasons below, that motion is **GRANTED IN PART AND DENIED IN PART**.

**I.**
**Summary Judgment Standard**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because

those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

Mr. McCloud failed to respond to the summary judgment motion. Accordingly, facts alleged in the motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant 'still [has] to show that summary judgment [is] proper given the undisputed facts,'" *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011), with those facts taken as usual in the light most favorable to the nonmovant." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021).

## II. Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

At all relevant times, Mr. McCloud was incarcerated at WVCF in G Cellhouse. Dkt. No. 49-1 at 5 (McCloud Dep.).

Jared Walk and Ms. Barron were Correctional Officers at WVCF. Dkt. 49-2 ¶ 2 (Walk Aff.); dkt. 1 at 2. Allan Adams was a Correctional Sergeant. Dkt. 49-3 ¶ 2 (Adams Aff). Randall VanVleet was the Lead Investigator at WVCF. Dkt. 49-4 ¶ 2 (VanVleet Aff.).

### B. The Use of OC Spray

As explained below, the parties dispute facts that are material to Mr. McCloud's OC spray claim. For example, Mr. McCloud testified at his deposition that Officer Walk sprayed into his cell without warning. Dkt. 49-1 at 7, 14. Nonetheless, the defendants presented as undisputed that Officer Walk did warn him before using the OC spray. Dkt. 50 at 3. The defendants should take note that the Seventh Circuit has explained:

> When a party has obtained knowledge through the course of discovery, or otherwise, that a material factual dispute exists and yet proceeds to file a summary judgment motion, in hopes that the opposing party will fail or be unable to meet its burden in responding to the motion, he defeats that purpose; and, more importantly, violates the rules of procedure which govern the conduct of trial, specifically Rule 11.

*Goka v. Bobbitt*, 862 F.2d 646, 650 (7th Cir. 1988); *see also Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989) ("[a] lawyer has an ethical obligation, enforceable under Rule 11, not to seek summary judgment if the facts show that his client is not entitled to that relief." (citing *Goka*, 862 F.2d at 650–51). The defendants should take care in the future to acknowledge

contrary evidence when deciding whether to move for summary judgment. With this in mind, the Court identifies the following undisputed and disputed facts.

Mr. McCloud testified that on May 17, 2023, when Officer Walk was passing out trays, he made inappropriate sexual comments to Mr. McCloud. Dkt. 49-1 at 6. Mr. McCloud later asked Officer Walk to radio Sergeant Adams. Dkt. 49-2 ¶ 6; dkt. 49-1 at 7. Officer Walk contacted Sergeant Adams over the radio, but Sergeant Adams was elsewhere in the facility and unable to respond immediately. Dkt.  49-2 ¶ 7-8; dkt. No. 49-3 ¶ 12. He indicated that he would return to G Cellhouse once he was able. Dkt. 49-2 ¶ 7-8; dkt. No. 49-3 ¶ 12. Mr. McCloud "yelled up to the pod officer to call the sergeant. She refused." Dkt. 49-1 at 7. At this time, Office Barron was in the security pod that overlooked the G Cellhouse. *Id.* at 15. Based on the distance between the control pod and Mr. McCloud's cell, Sergeant Adams testified that it is unlikely that Officer Barron would have been able to hear the conversation between Officer Walk and Mr. McCloud. Dkt. 49-3 ¶ 15. Mr. McCloud agrees that Officer Barron could not have heard the allegedly inappropriate sexual statements Officer Walk made to him but believes she should have been able to see Officer Walk's use of the OC spray and asserts that "she could have called the yard in." Dkt. 49-1 at 15-16.

Later, Officer Walk noticed that Mr. McCloud had placed his arm into the cuff port alongside items from within his cell in an attempt to block the cell port. Dkt. 49-2 ¶ 9-10. The parties' testimony conflicts regarding what happened next. Officer Walk testifies that he ordered Mr. McCloud to remove his hand from the cuff port so it could be shut but Mr. McCloud refused to do so until he spoke with Sergeant Adams. Dkt. 49-1 at 13-14; dkt. 49-2 ¶ 10. Officer Walk goes on to affirm that he ordered Mr. McCloud to allow the cuff port to be closed and warned him that a failure to do so would result in a conduct violation and could result in the application of OC. Dkt. 49-5 at 2 (Incident History); dkt. 49-2 ¶ 11; Dkt. 49-6 at 1. Officer Walk testifies that after

Mr. McCloud failed to remove his arm, he applied a one-second application of OC towards the cuff port, but most of the OC failed to make it into Mr. McCloud's cell. Dkt. 49-2 ¶ 12-13. Mr. McCloud testified to the contrary at his deposition, however, stating "He instantly pulled his OC mace out and sprayed me, emptied his whole can of OC on me, and then he called -- then he called the yard officer sergeant." Dkt. 49-1 at 7.

Officer Walk testifies that, after this first use of OC spray, he again warned Mr. McCloud that a failure to permit the cuff port to be closed would be a violation of a direct order and would result in another application of OC. Dkt. 49-2 ¶ 14. It appeared to Officer Walk that the second application of OC was only marginally more effective than the first, so at that time he radioed Sergeant Adams to inform him of the situation and that he was needed in G Cellhouse immediately. Dkt. 49-2 ¶ 16-17.

After he contacted Sergeant Adams, Officer Walk stayed outside of Mr. McCloud's cell for approximately ten minutes while Sergeant Adams returned to G Cellhouse. Dkt. No. 49-5 at 2:00-3:15 (Video).[1] Sergeant Adams came to G Cellhouse and indicated to Officer Walk that he could handle the situation and directed Officer Walk to leave the area. Dkt. 49-3 at 2; dkt. 49-5 at 3:46.

After Officer Walk left the range, Sergeant Adams escorted Mr. McCloud to a decontamination shower to permit him to wash off the OC spray. Dkt. 49-1 at 17; dkt. 49-5 at 4:00-4:30. While Mr. McCloud was in the shower, Sergeant Adams returned to Mr. McCloud's cell where he spoke with Mr. McCloud's cellmate.[2] Dkt. 49-3 ¶ 19; dkt. 49-5 at 4:30-7:30. Mr.

---

[1] The Court has reviewed the video of the incident, but the video has no sound and Officer Walk has his back to the camera for most of the relevant portions. The Court therefore cannot conclude from the video alone (1) whether Officer Walk gave a warning or (2) how long each application of OC spray lasted.

[2] The defendants contend that the video shows that Mr. McCloud's cellmate was in the process of cleaning the cell of OC spray. Again, however, any conversation between Sergeant Adams and Mr. McCloud's cellmate cannot be heard. And a review of the video shows only the cellmate moving around the cell and apparently collecting clean clothes for Mr. McCloud to put on after his shower. The video does not put beyond dispute whether the cell was cleaned of OC spray during this time.

McCloud was then removed from the shower and returned to his cell where he remained for about two and a half hours[3] until WVCF medical staff responded to the use of OC, per WVCF protocol. Dkt. 49-1 at 9; dkt. 49-3 ¶ 9. Mr. McCloud testified at his deposition that his cell was still "full of OC" when he returned after his shower. Dkt. 49-1 at 17. Mr. McCloud's lungs "hurt" and his skin was irritated. *Id.* at 22.

**C. Alleged Retaliation**

Several times after the incident, Mr. McCloud applied for employment opportunities outside of his cellhouse. Dkt. 49-1 at 11. Employment at WVCF was split into two categories: "out-of-house" jobs, which permit the inmate to leave their cellhouse to attend to work, i.e. kitchen services or grounds crew; and "in-house" jobs, which require the inmate to remain in the cellhouse. Dkt. 49-4 ¶ 7. Out-of-house employment opportunities usually have less supervision and applications for these jobs are reviewed by several WVCF staff, including Mr. VanVleet. *Id.* ¶ 8-9. According to facility policy, inmates who are under investigation for being in a STG, or gang, or have recent serious conduct violations are not allowed to have these jobs. *Id.* ¶ 10. After the incident at issue, Mr. McCloud applied for several out-of-house jobs, but he was under an active gang investigation and had been involved in disruptive incidents at WVCF. *Id.* ¶ 16; dkt. 49-6. Occasionally, unit team staff will call Mr. VanVleet to ask him if he has any gang affiliation or conduct reports, but he does not recall receiving such a phone call about Mr. McCloud. Dkt. 49-4 ¶ 18. Mr. VanVleet was not directly involved in the placement of any inmate in a particular cellhouse. *Id.* ¶ 17.

[3] Mr. McCloud testified both that he was in his cell for about an hour and about two and a half hours. This slight discrepancy is not material to his claims. Dkt. 49-1 at 8, 9.

## III.
## Discussion

### A. Excessive Force

The Eighth Amendment protects inmates from cruel and unusual punishment, including excessive force by prison officials. *McCottrell v. White*, 933 F.3d 651, 662 (7th Cir. 2019). This rule does not bar *de minimis* force unless the force is "of a sort repugnant to the conscience of mankind." *Wilkins v. Gaddy*, 559 U.S. 34, 37−38 (2010) (per curiam) (cleaned up). Even if the force applied is not *de minimis*, it remains permissible if used "in a good-faith effort to maintain or restore discipline." *McCottrell*, 933 F.3d at 664 (cleaned up). But malicious or sadistic force—even if it does not cause a serious injury—is prohibited. *Id.* To distinguish between good-faith and malicious force, courts consider several factors, including:

> (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response.

*Id.* at 663; *see also Whitley v. Albers*, 475 U.S. 312, 321 (1986). These factors are sometimes referred to as the "*Whitley* factors." Additionally, to survive summary judgment, a plaintiff must present evidence supporting "a reliable inference of wantonness in the infliction of pain." *Whitley*, 475 U.S. at 322.

It is not cruel and unusual punishment to use "mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners[.]" *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984). A prison officer may use small amounts of pepper spray to compel a disobedient prisoner to leave a cell. *Id.*; *see also Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 668 (7th Cir. 2012) (where prisoner had hit his cellmate and refused to comply with order to leave cell, use of pepper spray was justifiable). But "it is a

violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Soto*, 744 F.2d at 1270. Further, the Seventh Circuit has held that officers should generally provide adequate warnings to an inmate before administering OC spray. *Lewis v. Downey*, 581 F.3d 467, 479 (7th Cir. 2009) (force "including mace and tear gas ... should generally follow adequate warnings").

Although it is undisputed that Mr. McCloud had failed to comply with Officer Walk's orders, there is a dispute of fact regarding whether Officer Walk provided adequate warnings before the application of the OC spray. The parties further dispute how much OC spray Officer Walk used during the incident at issue. Because the Seventh Circuit has held that such warnings are usually required, and because a reasonable jury that believed Mr. McCloud about the amount of OC spray used could conclude that Officer Walk used more than necessary to gain Mr. McCloud's compliance, Officer Walk is not entitled to summary judgment on this claim.

### B. Failure to Protect

Mr. McCloud claims that Officer Barron failed to protect him from Officer Walk's use of OC Spray.

Prison officials have a duty to protect inmates from violent assaults by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). They incur liability for the breach of that duty when they were "aware of a substantial risk of serious injury to [an inmate] but nevertheless failed to take appropriate steps to protect him from a known danger." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (quoting *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002)); *see also Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010). To succeed on a claim for failure to protect, Mr. McCloud must show that (1) Officer Barron was aware of a substantial risk of serious

injury to him, and (2) she acted with deliberate indifference to that risk. *See Farmer*, 511 U.S. at 834, 837; *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008). Thus, an officer will only be liable when she had a "realistic opportunity to intervene and stop" the other officer's use of force. *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014) (cleaned up). "Whether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering all the evidence, a reasonable jury *could not possibly conclude otherwise*." *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005) (cleaned up) (emphasis in original).

Officer Barron argues that she did not have the opportunity to predict that Officer Walk was going to use OC Spray or to intervene to stop it. It is undisputed that Officer Barron was in the security pod that overlooked the G Cellhouse. Dkt. 49-1 at 15. Based on the distance between the control pod and Mr. McCloud's cell, Sergeant Adams testified that it is unlikely that Officer Barron would have been able to hear the conversation between Officer Walk and Mr. McCloud. Dkt. 49-3 ¶ 15. Mr. McCloud agrees that Officer Barron could not have heard the allegedly inappropriate sexual statements Officer Walk made to him but believes she should have been able to see Officer Walk's use of the OC spray and asserts that "she could have called the yard in." Dkt. 49-1 at 15-16. But Mr. McCloud can only speculate that Officer Barron could have perceived his interaction with Officer Walk and does not present direct evidence that Officer Barron could perceive the interaction between him and Officer Walk. *See White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (non movant receives the "benefit of reasonable inferences from the evidence, but not speculative inferences in his favor" (cleaned up)).

Further, it is undisputed that Officer Barron was not near Mr. McCloud's cell during the time that Officer Walk used the OC Spray and therefore it is undisputed that she could not have

physically intervened. Moreover, Mr. McCloud's own version of the events – that Officer Walk sprayed him without warning – precludes a conclusion that Officer Barron, who was not in the vicinity at the time could have predicted that Officer Walk was going to do so and prevented it. *See Hughes v. Durrent,* No. 15 C 6432, 2017 WL 3978702, at *8 (N.D. Ill. Sept. 11, 2017) (evidence that officer was an "unsuspecting bystander" of other officer's use of OC spray entitled him to summary judgment on failure to protect claim). Officer Barron is therefore entitled to summary judgment.

**C. Conditions of Confinement**

Next, Mr. McCloud alleges that Sergeant Adams did not allow him to have his cell cleaned after the use of OC Spray, making it hard for him to breathe.

To succeed on his conditions-of-confinement claim, Mr. McCloud must prove two elements: (1) a deprivation that is so serious that it denies "the minimal civilized measure of life's necessities"; and (2) prison officials' deliberate indifference to that deprivation. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

Mr. McCloud alleges that he was left in his cell for about an hour to two and a half hours after the application of OC into the cuff port. Dkt. 49-1 at 8-9. This resulted in some difficulty breathing and "irritation" on his skin. *Id.* at 22. But exposure to pepper spray does not ordinarily create a substantial risk to inmates' health and even direct exposure to pepper spray typically results in severe but temporary discomfort that does not pose a long-term health risk. *Lindsey v. Boughton*, No. 17-CV-52-JDP, 2018 WL 3824143, at *4 (W.D. Wis. Aug. 10, 2018) (granting summary judgment on claim that defendants were deliberately indifferent to inadequate ventilation of plaintiff's cell during pepper spray use) (citing *Boyce v. McKnight*, No. 14-cv-418, 2015 WL 8778330, at *10–11 (N.D. Ill. Dec. 15, 2015)). Having failed to respond to the motion for summary

judgment, Mr. McCloud has failed to designate evidence that the alleged exposure to the OC spray he experienced after being returned to his cell rose to the level of a deprivation that denied him "the minimal civilized measure of life's necessities." Sergeant Adams is therefore entitled to summary judgment.

**C. Retaliation**

Finally, Mr. McCloud alleges that Mr. VanVleet retaliated against him for complaining about Officer Walk's actions by denying him jobs and assigning him to the "worst" unit.

To succeed on a First Amendment retaliation claim, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) the plaintiff engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

First, Mr. VanVleet argues that Mr. McCloud has not identified specific First Amendment activity in which he engaged. But Mr. McCloud testified at his deposition that, among other things, he "filed a PREA" report about the incident at issue. Dkt. 49-1 at 6. The Court therefore assumes that Mr. McCloud participated in protected activity.

Next, Mr. VanVleet contends that there is no evidence to support the third element of Mr. McCloud's First Amendment claim. He argues that no adverse action taken against Mr. McCloud was carried out because of his protected speech. "The motivating factor [element] amounts to a

causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013); *cf. Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019) (probable cause usually defeats retaliatory arrest claim but not if plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals who did not engage in the same sort of protected speech were not). Nonetheless, "[a]llegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech." *Stagman v. Ryan*, 176 F.3d 986, 999–1000 (7th Cir. 1999).

Mr. McCloud alleged in his complaint that Mr. VanVleet interfered with Mr. McCloud's job assignments, assigned him to the "worst" housing units, and filed false conduct reports against him. Mr. VanVleet explains that the practice of WVCF is that an inmate cannot be assigned to "out-of-house" employment if he has recent serious conduct violations and/or suspected gang activity. *See* dkt. 49-4 ¶ 11. Between 2023 through 2024, Mr. McCloud had been caught fighting and a weapon was found in his cell. Dkt. 49-6. In addition, Mr. McCloud was under investigation for gang involvement during this time. Dkt. 49-4 ¶ 15. Mr. VanVleet has therefore provided non-retaliatory reasons for Mr. McCloud's job and housing placements. Mr. McCloud testified generally at his deposition that Mr. VanVleet did actively take retaliatory action against him, but he has not designated any evidence that Mr. VanVleet was directly involved in these decisions or evidence to specifically allow a conclusion that the reasons for Mr. McCloud's job or housing placement were pretextual. *See Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022).

(the nonmoving party receives "the benefit of conflicting evidence and reasonable inferences" but still must "produce evidence sufficient to establish [the] element[s] essential to" his claim). *Id.* Mr. VanVleet is therefore entitled to summary judgment.

## IV.
## Conclusion

The defendants' motion for summary judgment, dkt. [48], is **granted in part and denied in part**. The claims against Officer Barron, Sergeant Adams, and Mr. VanVleet are **dismissed**. The **clerk shall terminate** these defendants on the docket. Mr. McCloud's excessive force claim against Officer Walk remains.

The Court prefers that Mr. McCloud be represented by counsel for the remainder of this action. The **clerk is directed** to send Mr. McCloud a motion for assistance recruiting counsel with his copy of this Order. Mr. McCloud shall have **through October 20, 2026**, to file a motion for counsel using this form motion or to inform the Court that he wishes to proceed pro se. Once the motion has been ruled on and counsel has been recruited, the magistrate judge is asked to schedule a telephonic status conference to discuss further proceedings.

Mr. McCloud's motion for extension of time and notice of change of address, dkt. [55], is **granted** only to the extent that his address has been changed on the docket. His motion for an extension of time is **denied without prejudice** because the motion for summary judgment had been fully briefed for months before he filed his motion. If counsel is recruited for Mr. McCloud, counsel may choose to request an extension of deadlines if it is appropriate and the Court will consider such motion.

**IT IS SO ORDERED.**

Date: 09/21/2026

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

JEFFREY MCCLOUD
120679
BRANCHVILLE - CF
BRANCHVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All Electronically Registered Counsel